AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The property and premises located at 1250 S. Ridgehurst Circle, Wichita, Kansas, further described on Attachment A.

Case No. 14-M-6103-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Kansas: *(identify the person or describe property to be search and give its location):*

The property and premises located at 1250 S. Ridgehurst Circle, Wichita, Kansas, further described on Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B (items to be seized)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- [✓] evidence of a crime;
- [✓] contraband, fruits of crime, or other items illegally possessed;
- [✓] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. § 841(a)(1), 846 18 U.S.C. 1956(a) and 1957(b), and the application is based on these facts:

- [ ] Continued on the attached sheet.
- [ ] Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shauna Q. Sherwood, Task Force Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Apr 9, 2014

City and state: Wichita, Kansas

*Judge's signature*

Honorable Kenneth G. Gale, U.S. Magistrate Judge
*Printed name and title*

I, Shauna Sherwood, of lawful age, being first duly sworn, depose and state:

1. Your Affiant has been employed as a law enforcement officer with the Sedgwick County Sheriff's Office since 2002 and has been assigned as a Task Force Officer with the Drug Enforcement Administration (DEA) since 2008. Prior to working with the DEA your Affiant was a detective with the Narcotics Section for two years. Your Affiant has been involved in undercover purchases, controlled purchases, trash pulls, and the execution of search warrants. As a result, your Affiant has arrested numerous individuals for the violation of State and Federal statutes with regards to possession, manufacture and sale of controlled substances and weapons. I have attended and successfully completed the two-week Basic Narcotics Investigators Course, one-week Top Gun Narcotics Course, several Indoor Marijuana Grow Courses and numerous other similar training courses including Informant Handling and Narcotics Identification.

2. I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. Your Affiant has conferred with Sedgwick County Sheriff Detective Ron Goodwyn and knows the following.

4. Detective Goodwyn has been employed with the Sedgwick County Sheriff's Office (SGSO) for 24 years. He has received a minimum of forty hours of in-service training annually on a variety of law enforcement topics. Detective Goodwyn received training in conducting various types of investigations including illegal narcotics trafficking, and financial

1

investigations.  Detective Goodwyn has worked in an undercover capacity investigating illegal narcotics trafficking, has participated in the capacity of Affiant and/or participant in the execution of search, seizure, and arrest warrants involving various crimes including illegal drug trafficking and financial crimes.  Detective Goodwyn has investigated both state and federal crime and have presented criminal cases to both state and federal prosecutors.  Detective Goodwyn spent approximately four years assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer and approximately three years assigned to the Internal Revenue Service, Criminal Investigation Division (IRS-CID) in Wichita, Kansas as a Task Force Officer.

5. In support of this Application for Search Warrant, Affiant has probable cause to believe that based upon my training, experience, and participation in other investigations involving large amounts of heroin, cocaine, marijuana, and other controlled substances, and my participation in fraud and money laundering investigations, I know that persons engaged in drug trafficking, fraudulent activities, and money laundering, typically have the following items on hand at their homes and at locations where they store, sell illegal controlled substances, and participate in fraudulent activities:

   a.) Large amounts of cash reflecting receipts from fraud, money laundering, drug dealing and/or funds used to procure additional drugs for resale;

   b.) Records detailing the receipt and subsequent sale of drugs.  Records detailing the receipt of money involved in fraudulent activities, and money laundering.  The receipts that reflect amounts of money paid, received and/or due from purchasers or suppliers of drugs.  The receipts that reflect amounts of money expended to launder money and/or receipts that reflect amounts of money produced from fraudulent activities.

c.)  Triple-beam, digital or other types of scales used to weigh quantities of drugs;

d.)  Plastic bags, baggies or other materials used to package drugs for resale;

e.)  Firearms or other weapons used to protect large amounts of drugs and/or currency;

f.)  Financial records (such as automobile titles, automobile insurance records, real estate purchase and rental records, bank statements, checks, bank account passbooks, receipts, money order and cashier's check copies, wire transfers, deposit items, bank drafts, certificates of deposit, financial statements, loan records, payment journals, false identifications used to acquire assets or make expenditures in alias or nominee names) which reflect the purchase of assets (both personal and real property) and making of personal expenditures using the profits generated from the illegal sale of drugs and fraudulent activities and money laundering;

g.)  Various cutting agents, such as sugar, vitamins, lactose, and other non-controlled substances, used to dilute cocaine prior to its resale in order to generate additional profits;

h.)  Photographs showing other persons engaged in drug trafficking;

i.)  Address books, telephone books, electronic devices and/or computers listing the names and addresses of the associates, suppliers, customers of the drug trafficker, and co-conspirators involved in fraud and money laundering;

j.)  Tickets, schedules, papers, notes, receipts, and other items relating to domestic or foreign travel;

k.)  Keys or records reflecting the rental or location of safe deposit boxes, mail drops, storage units; and

l.)  Electronic devices, computers, and/or cellular telephones utilized in the drug trade.

m.)  Computers, computer software and computer diskettes utilized to maintain financial records.

n.) Drug paraphernalia

6. Your affiant also has probable cause to believe: That based on my training, experience, and participation in other investigations involving heroin, cocaine, marijuana, and other controlled substances, and my participation in fraud and money laundering investigations, I know that:

a.) drug traffickers and fraudsters often place assets in names other than their own to avoid detection of these assets by law enforcement agencies;
b.) when drug traffickers and fraudsters place their assets in alias or nominee names, they utilize their own addresses or the addresses of friends and/or relatives in the purchase and titling of those assets;
c.) even though these assets are in other person's names, the drug traffickers and fraudsters continue to use these assets and exercise dominion and control over them;
d.) because the drug traffickers and fraudsters continue to use and maintain control over these assets, they also maintain documents relating their use and control of these assets. These documents include records repair and service records;
e.) where drug traffickers and fraudsters amass large cash proceeds from the sale of drugs, or the profits from fraudulent activity, the traffickers/fraudsters attempt to legitimize these profits. That to accomplish these goals, drug traffickers/fraudsters utilize domestic banks, securities, cashier's checks, money drafts, real estate, and business fronts;
f.) all individuals, whether their income is from legal, legitimate sources or from illegal sources such as drug trafficking and fraud, commonly keep in their homes various papers, records, receipts and other documents evidencing the disposition of their income. Such disposition includes saving their money, such as making bank deposits and purchasing investments, and spending their money on housing, transportation, living expenses, travel and recreation. I also know that all individuals, including drug traffickers/fraudsters, keep, in their homes, documents such as bank account records, investment account records, receipts and invoices that show their expenditures or disposition of their incomes;
g.) I have participated in numerous federal and state search warrants upon the residences of large-scale drug traffickers/fraudsters and have always found such records in the residences of drug traffickers/fraudsters;
h.) the courts have recognized that unexplained wealth is probative as evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

7. Consequently, I submit this affidavit in support of a search warrant for the premises described as: 1250 S. Ridgehurst Circle, Wichita, KS, the residence of Terry BEASLEY.

8. I submit this affidavit in support of a search warrant to search the above described premises for:

   A) Books, records, receipts, notes, correspondence, ledgers, and other document or papers relating to the transportation, ordering, purchase, and distribution of controlled substances, in particular, cocaine, marijuana, and heroin, Schedule II controlled substances;

   B) Books, records, receipts, bank statements, canceled checks, deposit items, bank drafts, money orders, cashier's checks, wire transfer records, passbooks, certificates of deposit, time saving certificates, financial statements, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, sale or lease of automobiles and watercraft (including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, keys to automobiles and watercraft, records reflecting the purchase of items such as jewelry, furs, furniture and electronics, or other expenditures of money.

   C) Address books, telephone books, and electronic devices and/or computers, reflecting names, addresses and telephone numbers;

   D) Tickets, schedules, papers, notes, receipts, and other items relating to domestic or foreign travel;

   E) United States currency and financial instruments, including stocks, bonds, and other securities;

   F) Photographs, in particular, photographs of co-conspirators, assets, or controlled substances;

   G) Indicia of occupancy, residency, or ownership of the premises listed above;

   H) Firearms and ammunition;

I) Electronic devices, to include cellular telephones and computer devices, contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of computers and/or cellular telephones to include internet access records;

J) Safe deposit box keys and documents including rental agreements and contracts for the rental of safe deposit boxes and storage facilities; and

K) Computers, computer software and computer diskettes utilized to maintain financial records.

L) Drug paraphernalia

M) Cocaine

N) Heroin

9. There is probable cause to believe that the subjects of this investigation, including Terry BEASLEY and others yet unknown, have conspired to commit, have committed, are continuing to commit and will continue to commit offenses including the distribution of controlled substances (to wit cocaine and heroin), possession with intent to distribute controlled substances, conspiracy to distribute controlled substances, and use of communication facility to facilitate the commission of the above offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, the laundering of drug proceeds and bank fraud proceeds, in violation of Title 18, United States Code, Section 1956 (a)(1)(B)(i) and (ii) and 1957, conspiracy, in violation of 18 U.S.C. § 371, and that financial records relating to their accumulation, spending and laundering of Terry BEASLEY'S drug proceeds are

6

located in:

    1250 S. Ridgehurst Circle, Wichita, KS, the residence of Terry BEASLEY.

In support of this affidavit, your affiant has probable cause to believe the following:

## BACKGROUND

10. According to the National Crime Information Center, (NCIC), Terry BEASLEY'S criminal record dates back to 1970 when he was arrested by the Sedgwick County Sheriff's Office for forgery and uttering. In 1975 BEASLEY was arrested by the Sedgwick County Sheriff's Office for non support of a child. BEASLEY'S criminal arrest record continued through the 1970's; 1980's; 1990's; and 2000's with arrests for robbery, kidnapping, possession of stolen firearm, battery, forgery, computer crime, making a false writing, and probation violation.

11. According to the computerized records of the Wichita Police Department, (WPD), Terry BEASLEY has been named as a suspect in numerous check forgery cases. BEASLEY has also been named a suspect in a two different WPD drug cases, which is further explained later in this affidavit. BEASLEY has a 2007 conviction in Sedgwick County for making a false writing under case # 07CR979.

## NARCOTICS TRAFFICKING

12. On March 25, 2010, WPD officers searched 3623 East Funston Street, Wichita, Kansas pursuant to a state search warrant. After entering the residence, officers found three persons including Carlos Beasley. Officers recovered cocaine, marijuana, $26,872.20 in

7

cash, computers, and digital devices. Carlos Beasley told the officers that the house was his father's house and that he just came by to visit his father. Carlos Beasley's father is Terry BEASLEY. Carlos Beasley said that all of the drugs belonged to his father and that he could document that he lived at another address.

13. On July 28, 2010, WPD officers searched 3623 East Funston Street, Wichita, Kansas pursuant to a state search warrant. After entering the residence, officers found Erika L. Jackson and Terry BEASLEY. Seized pursuant to the warrant was drug paraphernalia.

**ELECTRONIC SURVEILLANCE**

14. On March 26, 2013, The United States District Court, District of Kansas authorized the interception of wire communication to and from cellular telephone number (316) 409-4284, utilized by Gerald Beasley. Gerald Beasley is a brother of Terry BEASLEY. Subsequently on May 08, 2013, the United States District Court, District of Kansas authorized the interception of wire communications to and from cellular telephone number (316) 992-9165, utilized by Antoine Beasley. Antoine Beasley is Gerald Beasley's son.

15. On March 29, 2013, a series of telephone calls between Terry BEASLEY and Gerald Beasley were recorded during which Terry BEASLEY was attempting to purchase illegal narcotics from Gerald Beasley. The calls started at approximately 1026 hours, with call # 399 and ended with call # 528 at approximately 2148 hours. The following specific calls between Terry and Gerald Beasley are described below. On call # 452, at approximately

1610 hours, Terry BEASLEY called Gerald Beasley and asked him, "You going to be able to do that?" Gerald responded by saying, "I don't know yet. I ain't even got a chance to look." Terry BEASLEY then asked Gerald Beasley, "Do, Do, you think you can do part of it or something?" Gerald Beasley again says, "I don't know. I don't know." I haven't even got a chance to look. I don't know." At approximately 2131 hours, on call # 525, Terry BEASLEY called Gerald Beasley back. The recorded call and their conversation seemed to leave off where their last one had ended. In essence, Gerald again told Terry that he had not had a chance to look. Gerald told Terry that if he had an extra one that he would give it to him, but it might be the next day. Gerald told Terry that what they had before was garbage and that he didn't want that again. The conversation ended with Gerald looking to see what he had. At 2148 hours, on call # 528, Gerald called Terry and told him that he had one for him. They make an agreement to meet at the shop to complete the transaction.

16. On March 31, 2013, at approximately 1343 hours, on call # 794, Terry BEASLEY attempted to make contact with Gerald Beasley. Gerald Beasley called Terry BEASLEY back on call # 800 which was recorded for approximately two minutes and then was terminated and resumed on call # 802. On call # 802, after a discussion about someone being killed, possibly over a drug deal, Gerald asked Terry, "when your goin pay me my money?" Shit, you told me you gonna bring it." The discussion continued with amounts of $2100 and $2200 being discussed.

17. On April 01, 2013, at approximately 1050 hours, on call # 927, Gerald called Terry and asked him, "did you want one more of these?" Terry responded by saying "Ah, yea, I

9

guess." Terry's hesitation in answering the question seemed to make Gerald tell Terry that he had no problem keeping it for himself. Terry then asked Gerald if he was going to have it with him and Gerald responded that he would and Gerald then asked Terry if he would have it with him. Terry told Gerald that he would.

18. On April 03, 2013, at approximately 1029 hours, on call # 1242, Terry called Gerald and asked if he had any good news yet. To which Gerald replied that he did not.

19. On April 05, 2013, at approximately 1749 hours, on call # 1707, Gerald called Terry and their conversation was as follows: Gerald said "I got that." Terry replied "How, how many?" Gerald said "Whatever you want." Terry said, "Ok, I'm here, I get it at cost." Gerald told terry that his cost was sixty-four per thousand. After a disconnected phone call, Gerald reconnects with Terry and more discussion takes place on call # 1715. Gerald told Terry that it is going fast. Terry told Gerald that he has 5400, but he would like to get twice that much. One more recorded phone call took place on April 05, 2013 during which Terry told Gerald that he would take eight G's.

20. On April 06, 2013, at 0022 hours, during call # 1832, Gerald called Terry and told him that he would be there in a minute. Terry and Gerald are recorded several more times during April 06, 2013, during which the conversations centered on Terry having problems with the "stuff". Gerald told Terry to put it in the freezer and you have to know how to work it.

21. On June 3, 2013, a series of recorded telephone calls took place between Antoine Beasley, Carlos Beasley, Isaac Woods, Helen Beasley, and Terry BEASLEY. The topic and summarization of the phone calls centered around the fact that Terry BEASLEY was

storing US Currency at a storage unit that Helen Beasley was called upon to open the storage unit. On one of the recorded calls between Antoine Beasley and Carlos Beasley, Antoine Beasley told Carlos Beasley that they (Carlos, Terry, and Antoine, Gerald) are going to cut ties. On another one of the recorded calls between Antoine Beasley and Isaac Woods, Antoine Beasley explained that Terry BEASLEY had invested money in their illegal drug distribution operation and that Gerald Beasley had placed Terry BEASLEY'S money in a storage unit controlled by his mother, Helen Beasley. Later on June 3, 2013, Investigators from the Bureau of Alcohol Tobacco, Firearms, and Explosives, (BATFE), the Drug Enforcement Administration (DEA), and the WPD observed Terry BEASLEY, Antoine Beasley and Helen Beasley meet at the Public Storage at 1175 S. Rock Road, Wichita, Kansas. After a short meeting, Terry BEASLEY left the area and was stopped by the WPD for a traffic infraction. BEASLEY was stopped close to his residence at 1250 S. Ridgehurst, Wichita, Kansas and BEASELY appeared to be going there. A WPD K-9 drug dog alerted on the vehicle and the vehicle was searched. WPD officers located two safes, one which contained approximately $55,100 in US Currency. The money was seized and forfeiture proceedings were begun. Terry BEASLEY later filed a claim for the money and produced copies of IRS W-2 G forms that showed gambling winnings of $23,078. Terry BEASLEY also produced IRS W-2 G forms in the name of Erika L. Jackson and explained that Erika Jackson had to claim the winnings because at the time, BEASLEY did not have proper identification to claim the winnings.

22. During the interception of Gerald and Antoine Beasley's phone calls, numerous phone

calls between Terry BEASLEY, Gerald and Antoine were recorded discussing and participating in the illegal drug distribution business. Based on the interception of the phone calls, evidence obtained from Antoine Beasley, after Antoine Beasley disposed of drug evidence into a public trash receptacle, and the execution of search warrants on June 12, 2013, on Gerald and Antoine Beasley's houses, in which drugs and drug distribution evidence was seized, your affiant believes that Gerald, Antoine, and Terry BEASLEY were and are trafficking cocaine, marijuana, and heroin.

**SOURCES OF INCOME AND FUNDS**

23. The Internal Revenue Service, (IRS) could not locate any record of a tax return filed under Terry BEASLEY'S name using Terry BEASLEY'S Social Security Number, (SSN) of XXX-XX-1519, for the tax years of 2005-2012. Kansas Department of Revenue, (KDOR) could not locate any record of a state income tax return for the years of 2006 through 2011 for Terry BEASLEY. The IRS did provide a record of interest paid under Terry BEASLEY'S name and SSN. The first 1098-E filed was filed on the tax year of 2010 for $233.00 paid in interest on a student loan. The second and third 1098's filed were for the tax years of 2011 and 2012 and totaled over $13,000 in mortgage interest paid to Smith and Company, Inc. Your affiant has probable cause to believe that this is the mortgage interest paid on the real property at 1250 S. Ridgehurst Circle, Wichita, Kansas.

24. Records obtained from the Kansas Department of Labor, (KDOL) reported that Terry BEASLEY had no record in their system and that they have no wages reported for Terry BEASLEY going back to at least 2005. The KDOL database covers most all of the other

fifty states for any wages earned and no record of any wages were found for Terry BEASLEY.

25. Your affiant knows from participating in this investigation and conferring with other investigators involved in this case that Terry BEASLEY resides at 1250 S. Ridgehurst Circle, Wichita, Kansas. Your affiant also knows that Terry BEASLEY is purchasing this residence from Smith and Company, Inc for the purchase price of $180,000 on a contract for deed. Terry BEASLEY is currently making monthly payments of $1,435.00 to Smith and Company, Inc. and has been since approximately August 2010.

26. An October 03, 2013 interview with Ron Smith of Smith and Company, Inc revealed that Terry BEASLEY is the person living and paying for the house at 1250 S. Ridgehurst Circle, Wichita, Kansas. Smith said that Terry BEASLEY was currently a couple of days late with his current $1,435.00 a month payment, but is usually on time with his monthly payment. Payment ledgers provided by Smith revealed the name Erika L. along with Terry BEASLEY on the payment ledger, however, Smith did not know of anybody else living there except for Terry BEASLEY. Smith also told investigators that the residence at 1250 S. Ridgehurst Circle, Wichita, Kansas has a floor safe built into the structure. The safe is located in the utility room of the residence. Smith knows this because this residence had been occupied by his parents, prior to being occupied by BEASLEY.

27. A recent inquiry of Westar Energy Corporation records show that the current customer at 1250 S. Ridgehurst Circle, Wichita, Kansas is Terry BEASLEY and Erika Morris, aka, Erika Jackson. Westar Energy Corporation listed no employment record for either Terry or Erika. They did however list that Terry received SSI income. Also, Westar Energy showed no other

13

current accounts for current utilities under either BEASLEY or Morris/Jackson.

28. On April 01, 2014, a federal grand jury in Wichita, Kansas returned a true bill indicting Terry BEASLEY on conspiracy to distribute and to possess with the intent to distribute heroin, money laundering and money laundering conspiracy. An arrest warrant for Terry BEASLEY was then issued.

29. On April 09, 2014, federal agents along with local police officers contacted Terry BEASLEY at 1250 Ridgehurst Circle and arrested him. Before the arrest was made and while officers were knocking at the front door of the residence and announcing their presence for approximately five to ten minutes, WPD Officer Robert Thatcher, ATF Special Agent Matt Brown, and DEA TFO Tim Eldredge observed, through a window, Terry BEASLEY moving around the inside residence. Officer Thatcher also observed an outside camera on the residence. When Terry BEASLEY opened the front door officers informed him that they had an arrest warrant for his arrest. Terry BEASLEY indicated to them that he needed his clothing and medication before he could leave. Officers remained with Terry BEASLEY while in the residence and while officers where there they were told that there might be other people in the residence. Officers found three other persons in the residence. While making the residence safe and making sure that officers knew the presence of anyone that was in the residence, WPD Officer Thatcher observed what appeared to be illegal narcotics (cocaine) in plain view on top of an automobile pickup bed cover in the attached garage of the residence. Officer Thatcher field tested the suspected cocaine and found that it tested positive for the presence of cocaine. Along with the cocaine was an empty paper box that electronic scales are packaged in and sold. There were also empty plastic bags.

30. Based upon your affiant's experience, training and the facts stated in this Affidavit, your affiant has probable cause to believe that Terry BEASLEY and possibly Erika L. Jackson, aka, Erika Morris, actually live in the residence at 1250 S. Ridgehurst Circle, Wichita, Kansas.  As such, your affiant has probable cause to believe that Terry BEASLEY and Erika Jacksons' personal effects; personal and/or financial records will be kept and stored at 1250 S. Ridgehurst Circle, Wichita, Kansas. Your affiant has probable cause to believe that these records, along with records or items disclosing the sources of income to BEASLEY and/or Jackson will provide evidence of crimes, fruits of crimes, other items illegally possessed, or property designed for use, intended for use, or used in committing the crimes of the distribution of controlled substances (to wit cocaine and heroin), possession with intent to distribute controlled substances, conspiracy to distribute controlled substances, and use of communication facility to facilitate the commission of the above offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, the laundering of drug proceeds and bank fraud proceeds,  in violation of Title 18, United States Code, Section 1956 (a)(1)(B)(i) and (ii) and 1957,  conspiracy, in violation of 18 U.S.C. § 371.

FURTHER AFFIANT SAITH NOT.

SUBSCRIBED TO AND SWORN before me this 9th day of April, 2014.

_____
TFO Shauna Q. Sherwood
Drug Enforcement Administration

_____
KENNETH G. GALE
United States Magistrate Judge
District of Kansas

## ATTACHMENT A

**Property to be searched:**

The premise is further described as follows: 1250 S. Ridgehurst, Wichita, Kansas, 67230, , is a ranch style structure, red brick front, three car attached garage, 5th structure north of Zimmerly Street on the east side of Ridgehurst Street, front door faces west and the numbers "1250" are black in color next to the front door.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

A. Books, records, receipts, notes, correspondence, ledgers, and other document or papers relating to the transportation, ordering, purchase, and distribution of controlled substances, in particular, cocaine, marijuana, and heroin, Schedule II controlled substances;

B. Books, records, receipts, bank statements, canceled checks, deposit items, bank drafts, money orders, cashier's checks, wire transfer records, passbooks, certificates of deposit, time saving certificates, financial statements, real estate purchase and/or rental records (including contracts, deeds, promissory notes, applications, and rental agreements), records reflecting the purchase, sale or lease of automobiles and watercraft (including titles, registration, purchase or lease agreements, and payment records) automobile insurance policy records, keys to automobiles and watercraft, records reflecting the purchase of items such as jewelry, furs, furniture and electronics, or other expenditures of money.

C. Address books, telephone books, and electronic devices and/or computers, reflecting names, addresses and telephone numbers;

D. Tickets, schedules, papers, notes, receipts, and other items relating to domestic or foreign travel;

E. United States currency and financial instruments, including stocks, bonds, and other securities;

F. Photographs, in particular, photographs of co-conspirators, assets, or controlled substances;

G. Indicia of occupancy, residency, or ownership of the premises listed above;

H. Firearms and ammunition;

I. Electronic devices, to include cellular telephones and computer devices, contracts, purchase and/or rental agreements, and billing records relative to the acquisition and use of computers and/or cellular telephones to include internet access records;

J. Safe deposit box keys and documents including rental agreements and contracts for the rental of safe deposit boxes and storage facilities; and

K. Computers, computer software and computer diskettes utilized to maintain financial records.

L. Drug paraphernalia

M. Cocaine

N. Heroin